The plea of estoppel urged in this case was, therefore, erroneously sustained.

 2. The plea of *res adjudicata* filed in this court by plaintiff must also be overruled, as it is apparent that the defense in this suit is based upon a warranty *specifically embodied* in the written contract of sale, and not upon *the verbal* warranty of the capacity of the machine, urged by defendant in the prior suit.

The two defenses, therefore, are not identical, nor is "the thing demanded" the same.

"The thing demanded" in the first suit is the purchase price of a dragline machine; while "the thing demanded" in this suit is the price of machinery parts and repairs.

"The authority. of the thing adjudged takes place only with respect to what was the object of the judgment. *The thing demanded must be the same; the demand must be founded on the same cause of action;* the demand must be between the same parties, and formed by them against each other in the same quality." (Italics ours.) Rev. Civ. Code, art. 2286; State v. American Sugar Refining Co., 108 La. 604, 32 So. 965.

Judgment was rendered in the lower court in favor of plaintiff, sustaining the plea of estoppel, and in the sum of $4,301.50, together with legal interest on the account sued for, at the rate of 5 per cent. per annum; and also maintaining the writ of attachment herein sued out, and recognizing and enforcing plaintiff's privilege as attaching creditor on the property seized, according to law.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that the plea of estoppel, as well as the plea of res adjudicata filed in this court, be overruled; that this case be remanded and proceeded with in due course and in accordance with the views herein expressed; and that plaintiff, appellee, pay the costs of appeal.

O'NIELL, C. J., is recused.

**158 So. 558**

## BRINSON v. MONROE AUTOMOBILE & SUPPLY CO. et al.

.No. 32782.

Nov. 26, 1934.

Rehearing Denied Jan. 7, 1935.

Thompson & Thompson, of Monroe, for appellants.

. Hudson, Potts & Bernstein, of Monroe, and Merrick, Schwartz, Guste, Barnett & Redmann, of New Orleans, for appellee.

LAND, Justice.

On March 31, 1931, William G. Brinson, while in the employ of defendant, a commercial partnership carrying on an automobile and radio business in the city of Monroe, received certain injuries which resulted in his death.

Plaintiff, Mrs. Mary C. Brinson, is the widowed mother of her deceased son, and was wholly dependent upon him for support.

Plaintiff and defendant, by joint petition filed June 5, 1931, settled the claim under the Compensation Laws of this state (Act No. 20 of 1914, as amended) ; the lower court rendering judgment in favor of plaintiff for $20 per week for 300 weeks from March 31, 1931.

The Union Indemnity Company was the compensation insurance carrier for defendant, and paid plaintiff $20 per week regularly until that company became insolvent and went into the hands of receivers, when the payments immediately stopped.

The plaintiff received from that company $1,840, for 92 weeks ; the last weekly payment having been made on December 31, 1932, covering the period from December 27, 1932, to January 2, 1933. No further payments have been made since that date.

After repeated demands upon defendant, without avail, plaintiff, on June 16, 1933, ruled her judgment debtor into court to show cause why the judgment should not be declared due in its entirety, because of the failure of defendant, after formal demand, to pay compensation for more than six consecutive weeks.

After answer filed by defendant and trial of the rule, judgment was rendered on June 28, 1933, against defendant, the commercial partnership, for compensation for 208 weeks at $20 per week, due and payable in its entirety, in the full sum of $4,160.

This judgment was filed in the mortgage records and duly recorded at 12:24 o'clock p. m. on that date.

On the morning of the same day, defendant partnership transferred all of its property to a corporation of the same name, except with the addition of the letters "Inc.," whose charter was filed at the time of the transfer.

A writ of fi. fa. was issued upon the judgment, and was returned nulla bona by the sheriff for the parish of Ouachita.

Plaintiff ruled her judgment debtor into court for the purpose of examination with reference to its estate and the mode and manner of this transfer. This examination finally took place, and was concluded by defendants, both the partnership and the corporation, giving plaintiff a letter admitting that the entire assets of the partnership were transferred in violation of the Louisiana Bulk Sales Law and that neither of the parties made any efforts to comply with the terms and provisions of the statute.

The present suit was then filed September 26, 1933, alleging that the transfer was made

in violation of the provisions of Act No. 270 of 1926, the Louisiana Bulk Sales Law.

Plaintiff prayed that a writ of attachment issue upon the property transferred, that same be held until further order of the court for the benefit of all the creditors, including plaintiff; that its fair value be fixed and the proportionate rights of the creditors be determined; and that the property be administered in such a manner by sale, or as the court might direct and deem proper, for the satisfaction of the various creditors in their proportionate right.

Motion to dissolve the attachment was filed and overruled by the court.

Defendants answered, and the cause was set down on the merits.

At the time of trial, it was admitted by defendants that all of the creditors of the Monroe Automobile & Supply Company, the commercial partnership, had been satisfied in full except the judgment creditor, Mrs. Mary C. Brinson, plaintiff herein, and that those creditors had been paid by the Monroe Automobile & Supply Company, Inc.

It was further admitted that the value of the assets acquired by the corporation, formerly belonging to the partnership, exceeded by $200,000 the amount due all of the then unpaid creditors of the partnership.

Judgment was then rendered in favor of Mrs. Mary C. Brinson, plaintiff, against defendants, decreeing that the Bulk Sales Law had been violated and that the transfer was void as against the creditors of the transferor, that plaintiff *was the only unsatisfied creditor* of the transferor, Monroe Automobile & Supply Company, partnership, at the time of the transfer in bulk, and that Monroe Automobile & Supply Company, Inc., was accountable, in accordance with the statute, to plaintiff.

The writ of attachment was maintained, the lien and privilege resulting therefrom was recognized, and judgment was rendered against Monroe Automobile & Supply Company, Inc., for $4,160 and all taxable costs.

It was ordered that the property seized and attached be sold according to law, and that plaintiff be paid by preference and priority over any and all other creditors of defendant Monroe Automobile & Supply Company, Inc.

From this judgment defendants have taken a suspensive and devolutive appeal.

Plaintiff has answered the appeal, setting forth that same is frivolous and for the sole purpose of delay, and prays that damages be had by this appellee therefor.

1. Attorneys for defendants Monroe Automobile & Supply Company and Monroe Automobile & Supply Company, Inc., assign as errors the following:

(a) The court erred in sustaining the writ of attachment, as no one of the statutory grounds or causes for an attachment was alleged or proved by plaintiff.

(b) The court erred in holding that the transfer complained of came within the intendment of the Bulk Sales Law, Act No. 270 of 1926.

(c) If the transaction complained of came within the provisions of the Bulk Sales Law, Act No. 270 of 1926, the court erred in rendering personal judgment against Monroe Automobile & Supply Company, Inc., the alleged purchaser.

It is true that an attachment never issues in aid of the execution of a judgment. But when a transfer of all the assets of a debtor is made in violation of the Bulk Sales Law, on the same day the creditor has obtained a judgment, but prior to the recordation thereof, it is not true that the judgment creditor loses his right to a writ of attachment under Act No. 270 of 1926.

Section 8 of this statute provides: "That any property transferred in violation of the provisions of this Act shall be subject to attachment in an action brought *by any creditor* of the transferor." (Italics ours.)

■ The words "any creditor of the transferor" are, without question, broad enough to include a judgment creditor. Indeed, it would be a situation anomalous in the extreme if a creditor whose claim has been liquidated by judgment should be placed in a more disadvantageous position, as to the vital right of attachment under the Bulk Sales Law, than a creditor with a mere unliquidated claim.

■■ The writ of attachment is granted to the creditor of the transferor under the Bulk Sales Law, not in execution of a judgment, but merely to conserve the property, by seizing the same under the writ, in order that it may be protected, and the transferee may not dispose of it in the same manner as the transferor has already done.

The statute specifically declares that a sale in violation of its terms is void and is a nullity in so far as the creditors of the transferor are concerned, and that the transferee, into whose possession the property transferred has come, shall hold the same as receiver, and that he shall account to the creditors of the transferor, each in his pro rata share to the extent of the fair value of the property transferred. Sections 1 and 3.

Because of the exigency of the case, the Legislature conferred upon any creditor the right to attach solely upon the ground of the transfer having been made in violation of the statute. Such transfer was fraudulent and void under the very terms of the statute, and it was of vital importance that the property should be held intact in the custody of the court in order to compel the transferee to account for same to the creditors.

Had the Legislature intended otherwise, allegation of the usual grounds for the writ of attachment under article 240 of the Code of Practice would undoubtedly have been specifically required.

2. The second assignment of error is that the court erred in holding that the transaction or transfer complained of came within the intendment of the Bulk Sales Law, Act No. 270 of 1926.

Section 1 of the statute provides: "That the transfer in bulk, and otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the transferor, of any portion or the whole of a stock of merchandise, or merchandise and fixtures, or of all or of substantially all of the fixtures or equipment used or to be used in the display, manufacture, care or delivery of any goods, wares or merchandise · including movable store and office fixtures, horses, wagons, automobile trucks and other vehicles or other goods or chattels of the business of the transferor *shall be void as against the creditors of the transferor, unless made in con-*

*formity with the provisions of this Act.*"
(Italics ours.)

In the sworn statement of Mr. W. L. Ethridge, the managing partner of the commercial partnership, Monroe Automobile & Supply Company, in examination of that partnership as a judgment debtor, Mr. Ethridge's description of the business of the concern was the buying and selling of automobiles, trucks, tires, tubes, ring gear business, wiring batteries, air cleaners, rectifiers, air compressors, all replacement parts of Dodge cars, radiator compound, rear wheel bearings, lubricants, and radios for both automobiles and homes.

We find that article 9 of plaintiff's petition alleges that this commercial partnership was engaged in such a business as Mr. Ethridge has described, and we find in article 9 of defendants' answer that they admit that the business is of such a nature and character as set forth in article 9 of plaintiff's petition.

Defendant commercial partnership keeps "a stock of merchandise" and comes clearly within section 1 of the statute.

Defendants contend that the Bulk Sales Law, Act No. 270 of 1926, does not apply to all creditors, but only to those who become creditors as the result of having sold goods or merchandise, as the main purpose of the statute is to protect the wholesaler.

Such contention debars all state and federal claims for taxes, all claims for rent, all claims for wages of employees, all claims for light, gas, and water, all claims for torts, etc., and would violate the fixed principle in our law that the property of the debtor is the common pledge of all his creditors, by creating invidious discriminations that would strike the Bulk Sales Law of this state with unconstitutionality and nullity.

Section 3 of the Bulk Sales Law provides that "at the suit *of any creditor,*" the transferee, who fails to comply with the act, shall be held liable to "*all the creditors* of the said transferor as receiver for the fair value of all the property so transferred to him."

And in section 2 (c) of the act, it is declared: "Provided, however, that *any creditor* whose name has been omitted from such statement may give written notice of his claim to the transferee and shall, thereafter, be entitled *to share equally with the other creditors* entitled to the benefits of this Act as to the proceeds of such sale or transfer as are then held by the transferee."   (Italics ours.)

These sections of the act contemplate and require that the purchase price or other consideration of a transfer, made in violation of its provisions, shall be applied "to the payment of the bona fide claims of the creditors of the said transferor pro rata," thereby making the property of the debtor the common pledge of all of his creditors, without distinction or discrimination, and preserving the constitutionality of the act.

And the jurisprudence in practically all other jurisdictions holds, in interpreting like acts, that they cover *all creditors*, regardless of how the debt arose.   McDaniels v. J. J. Connelly Shoe Co., 30 Wash. 549, 71 P. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889 ; Escalle v. Mark, 43 Nev. 172, 183 P. 387, 5 A. L. R. 1514 ; Eklund v. Hopkins, 36 Wash. 179, 78 P. 787 ; 27 C. J. 879 ; Douglas Fir Lumber Co. v. Star Lumber Co., 27 N. M. 403, 201 P. 867, 41 A. L. R. 1476.

It is also contended by counsel for defendants that the transfer of the assets in this case was made to the Monroe Automobile & Supply Company, Inc., not by the partnership, Monroe Automobile & Supply Company, but by the individuals composing the partnership, and that the new corporation was likewise formed by the individuals composing the former partnership.

And that, as the judgment in favor of plaintiff in this case was rendered against the partnership, but not against its component members, as solidary obligors, no liability has been fastened upon them as members of the partnership.

It is therefore argued by counsel for defendants that, if the partners were not debtors of plaintiff, a sale by them to the corporation of the assets of the former commercial partnership cannot be a violation of the Bulk Sales Law.

This is not a case in which one of the partners sold his interest in the partnership to the other, as in Schoeppel v. Pfannensteil, 122 Kan. 630, 253 P. 567, 51 A. L. R. 398, and in Parker v. Tapscott, 142 Miss. 768, 107 So. 561, leaving the whole stock in the possession of the other member of the firm and just as accessible to the creditors for the satisfaction of their claims as prior thereto.

On the contrary, by an act of sale or transfer, signed by the partnership and its individual members, all of the movable assets or personal property of the partnership were transferred to the new corporation, formed by the individual members of the former partnership. Tr. 69, 70, and 71.

At the date of the sale, June 28, 1933, the partnership had not been liquidated, as plaintiff's judgment had not been paid.

■ A partnership, once formed and put into action, becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person which has peculiar rights and attributes. The partners are not the owners of the personal partnership property. It belongs to the ideal being, which has the control and administration thereof, to enable it to fulfill its legal duties and obligations. The partners own only the residuum. Smith v. McMicken, 3 La. Ann. 322; New Orleans v. Gauthreaux, 32 La. Ann. 1128; Succession of Pilcher, 39 La. Ann. 362, 1 So. 929; Raymond v. Palmer, 41 La. Ann. 425, 6 So. 692, 17 Am. St. Rep. 398; Sherwood v. His Creditors, 42 La. Ann. 103, 7 So. 79.

■ A commercial partnership is exclusively confined to personal property. If a firm buy real property, they become joint owners of, not partners in, it. None of them can alienate it without the consent of the others. And it may be seized, as far as the undivided interest of each partner is concerned, by their individual creditors. Louisiana Digest Annotated, vol. 5, "Partnership," p. 816, § 30, citing numerous decisions of this court.

■ It follows, therefore, that, as all of the property transferred by the partnership to the new corporation consisted of personal property, and as its affairs had not been liquidated, the partnership, the debtor of plaintiff, was the owner of all the property so transferred; and the transfer falls within the purview of the Bulk Sales Law, as its provisions were not complied with by the transferor.

3. Counsel for defendants also direct our attention to the fact that *a personal judgment* has been rendered in favor of plaintiff against Monroe Automobile & Supply Company, Inc., the transferee.

■ The liability of defendant corporation, as a purchaser under the Bulk Sales Law, is that of a receiver only, for the fair value of the property transferred to it for the benefit of creditors, and not personally for the amount of the debts of the transferor or vendor.

If the defendant Monroe Automobile & Supply Company had been a corporation instead of a partnership, and had made a transfer of all of its assets to the defendant corporation, Monroe Automobile & Supply Company, Inc., in violation of the Bulk Sales Law, it is clear that defendant corporation would not have been personally liable for the debts of the corporation transferor or vendor.

It may be true, as a general principle of law, that "where the purchaser is a new corporation, composed of the same shareholders as the old, the transaction, in no manner, affects the rights of the creditors of the old corporation, who may proceed for the recovery of the amounts due them against either corporation, or both; and that, whether the claims be founded in contract or tort, since the real debtor, though represented by two corporations instead of one, remains the same, in contemplation of law." Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 760, 70 So. 789, 795, L. R. A. 1916D, 1138, and authorities there cited.

However, in the case cited supra, the court was not dealing with a sale or transfer made in violation of the Bulk Sales Law, in which the Legislature has fixed specifically the liability of the transferee, not as a personal liability, but only as a receiver for the fair value of the property transferred to it for the benefit of creditors.

Plaintiff has sued under that law, and has invoked its provisions as the basis of recovery in this case. Plaintiff insists that defendant corporation comes within the scope of that law, and is liable thereunder, not personally, but only as a receiver. Plaintiff has not prayed for a personal judgment against defendant corporation, for the plain reason that plaintiff, in her pleadings prayer and in her brief, admits that defendant corporation is not personally bound for the debts of the transferor, Monroe Automobile & Supply Company, the commercial partnership.

For these reasons, the judgment should be amended so as to relieve defendant corporation of personal liability.

■ 4. Plaintiff, in our opinion, is not entitled to judgment for damages for a frivolous appeal, as the defenses in this case are made apparently in good faith and without the mere purpose of delay.

It is therefore ordered that the judgment in favor of plaintiff, Mrs. Mary C. Brinson, and against defendant Monroe Automobile & Supply Company, Inc., in the sum of $4,160 be amended so as to make said judgment payable out of the sum of $200,000, the fair value of the assets fixed in said judgment and transferred to defendant corporation, in excess of the aggregate amount due to all creditors of the Monroe Automobile & Supply Company at the time of said transfer in bulk.

It is now ordered that the judgment, as amended, be affirmed, and that plaintiff appellee pay the costs of appeal.